IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

BERNIE L. FARMER, No. 164500, )
JAMES HARDY, No. 164676, )
                                       Plaintiffs, )
                          v. )      No. 03-4180-CV-C-NKL
DAVE DORMIRE, et al., )
                         Defendants. )

## ORDER

      Plaintiffs, inmates confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. In support of their claims for damages and injunctive relief, plaintiffs state their First Amendment free speech rights were violated when defendants denied them their role-play-by-mail gaming materials. Plaintiffs allege that defendants' policy banning role-play-by-mail games is arbitrary and irrational and is not reasonably related to a legitimate governmental objective.

      Defendants moved for summary judgment on August 1, 2005, and plaintiffs have filed a response. Defendants subsequently filed a reply and a motion to strike plaintiffs' expert designation of Mr. Paul Cardwell.

      Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.*, 838 F.2d 268, 273 (8th Cir. 1988).

      Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories,

and admissions on file," that there is a genuine issue of fact to be resolved at trial. *Celotex*, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Hass v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Statement of Facts

Plaintiffs Bernie Farmer and James Hardy are prisoners incarcerated at the Jefferson City Correctional Center (JCCC), a maximum security prison in Jefferson City, Missouri. Defendants are Missouri Department of Corrections personnel. In August 2002, defendant Dormire approved a revision to the JCCC offender mail procedures banning materials which "promote/contain any type of 'role play' games (i.e., Dungeons & Dragons, World Conquest, Forgotten Realms, Hyberian War, Duelmasters, etc.)." *See* August 16, 2002, Memorandum regarding Offender Mail Procedures (Memo Revision). Defendant Dormire also approved a revision to the JCCC Standard Operating Procedures (SOP) to include that "offenders will not subscribe/purchase/receive items that promote or contain any type of role play games (i.e. Dungeons and Dragons, World Conquest, Forgotten Realms, Hyberian War, Duelmasters, etc.)." *See* JCCC SOP 19-1.1, Conduct Rules and Sanctions. The SOP were drafted with the belief that it placed a ban on all role-playing materials at MSP/JCCC. *See* Deposition of David Dormire. Defendant Dormire implemented the ban on role-playing materials based upon the directive of defendant Lombardi, Director of Adult Institutions.

As a result of the ban on role-playing materials, plaintiff Farmer had his role-play-by-mail gaming results confiscated on at least eight separate occasions; and plaintiff Hardy was

2

issued a conduct violation for having in his cell, among other things, one packet of nuclear weapons information, diagrams of the University of Missouri campus, and numerous folders of diagrams, manuals, instructions, and other papers related to a Dungeons and Dragons-type game. The numerous folders of diagrams, manuals, instructions, and other papers related to a Dungeons and Dragons-type game consisted of material that was plaintiff Hardy's own work and from other role-playing publications. The materials confiscated that were plaintiff Hardy's own work, consisted of a gaming system and instructions that Hardy was writing.

## Discussion

*Plaintiffs' Expert*

Plaintiffs' expert, Paul Cardwell, Chairman for the Advancement of Role-Playing Games, appears to have expertise as to the history and possibly the contents of role-play games. Mr. Cardwell, however, has failed to establish that he has any expertise in safety and security of prisons or in how prisoners in maximum security prisons psychologically respond to role-play games. Mr. Cardwell has provided no information indicating he has any training in prison safety and security or any type of psychological training. The only information provided by Mr. Cardwell as to safety and security in prisons is based upon his sending out seven letters to seven separate institutions known to have banned role-play games, over a period of fourteen years, inquiring into whether there had been incidents of violence in connection with role-play games. Mr. Cardwell testified in his deposition, and states in his report, that none of the seven letters was returned with a response and, thus, he concluded from such failure that there were no incidents of violence related to role-play games at the seven prisons. This conclusion, however, is pure speculation and would not even be admissible at trial. Furthermore, Mr. Cardwell's own expert report acknowledges that any research done by other members of the Advancement of Role Playing Games to show that role playing games do not induce violence is incomplete, was not subject to peer review, is unpublished, and was not done in the context of prisons. Accordingly, plaintiffs' expert has failed to present any admissible evidence as to the effect role-play games have on the safety and security of a prison or on maximum security prisoners. Therefore, for

3

purposes of summary judgment, this court will limit Mr. Cardwell's expertise to the history of role-play games and the typical content of such games.

*First Amendment Claims*

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Johnson v. California*, ___ U.S. ___, ___, 125 S. Ct. 1141, 1149 (2005) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). To determine whether a prison regulation violates a prisoner's First Amendment rights, the court must determine whether the regulation is "'reasonably related' to legitimate penological objectives." *Turner v. Safley*, 482 U.S. 78, 87, 107 S. Ct. 2254, 2261 (1987) (citation omitted). In *Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 1878-79 (1989) (quoting *Turner*), the Court held "that regulations affecting the sending of a 'publication' * * * to a prisoner must be analyzed under the *Turner* reasonableness standard. Such regulations are 'valid if [they are] reasonably related to legitimate penological interests.'"

The relevant factors are: (1) whether the governmental objective underlying the regulation at issue is legitimate and neutral and that the regulations are rationally related to that objective; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on others in the prison; and (4) whether there are obvious, easy alternatives such that the regulation in question is an exaggerated response to prison concerns. *Turner v. Safley*, 482 U.S. at 89-90.

In applying the first factor, the undisputed evidence is that George Lombardi, the former Director of Adult Institutions for the State of Missouri, initiated the ban on role-play games at JCCC in response to what he perceived to be safety and security concerns related to such role-play games. Lombardi states he initiated the ban in response to a meeting, which included David Miller, Superintendent of the Boonville Correctional Center, who presented the issue of role-playing games. During the meeting, the participants discussed their concerns that persons playing role-play games such as Dungeons and Dragons might become so intimately involved in the games that they would start acting out their fantasy game characters' roles in real life, and might also respond violently toward other people or

4

injure or kill themselves.  Media coverage at the time enhanced their concerns.  Lombardi states the participants discussed their concern that such fantasy type games would affect inmates.  Lombardi states the meeting resulted in the decision to implement a ban on role-play games in the prison.  Plaintiffs make no challenge as to how or why the plan was implemented.  They claim only that it is an exaggerated response to a nonexistent danger.

The courts do not have the knowledge or the expertise of prison officials, and the judiciary is ill-equipped to deal with the difficult and delicate problems of prison management.  *Thornburgh v. Abbott*, 490 U.S. 401, 407-08, 109 S. Ct. 1874, 1878-79 (1989).  The court affords considerable deference to the determinations of prison administrators.  *Id.*  Prison officials may well conclude that certain proposed interactions, although seemly innocuous to laymen, have potential significant implications for the order and security of the prison.  *Id.* at 1878.

In the instant case, the undisputed evidence is that George Lombardi, the Director of Adult Institutions in Missouri, who has many years of experience and training related to prison safety and security, determined role-play games to be a threat.  Although Lombardi states he cannot point to an incident of violence associated with role-play games, he states this is because such games were banned at the onset of their existence within the prison and, therefore, such incidents did not arise.  The courts have held that "[s]ome latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty."  *Id.* at 1879.  Prison administrators need not wait until violence occurs before implementing prison regulations banning conduct which they believe will compromise the safety and security of the prison.

Safety and security are legitimate penological interests.  *See Cutter v. Wilkinson*, ___ U.S. ___, ___, 125 S. Ct. 2113, 2114 (2005) (safety and security are undisputedly compelling state interests in the prison setting).  Plaintiffs have come forward with no admissible evidence that defendants' concern for safety and security is not legitimate and honestly held, that the limitation on role-play games is not rationally related to that goal, or that the plan is an exaggerated response to defendants' legitimate concern.  Plaintiffs' expert has no expertise or credentials to testify how role-play games affect the safety and security of a prison environment, or in how prisoners in a maximum security institution like JCCC

5

might respond to role-play games. Inmates in maximum security prisons are there for a reason. Their ability or willingness to conform their conduct to the requirements of the law is not the same as that of free adults. Without such expertise, plaintiffs cannot establish that the ban on role-play games was not reasonably related to prison safety and security.

In *Menser v. Long*, No. 96-1593 (E.D. Mo. 1999) (unpublished), the court found it rational for prison officials to fear that inmate exposure to role-playing games may lead inmates to become absorbed with their roles in such games, lose touch with reality, and become violent if the role in the game requires violence toward other inmates or staff. *See also Jacquay v. Maynard*, 47 F.3d 1178 (10th Cir. 1995) (unpublished) (complete ban on role-playing material is reasonably related to prison safety); *Bahrampour v. Lampert*, 356 F.3d 969 (9th Cir. 2004) (prohibiting role-playing materials reasonably related to legitimate penological interests). Therefore, the regulation banning role-play games fulfills the first *Turner* factor.

As to the second *Turner* factor, the undisputed evidence is that plaintiffs had numerous other games available to them at the prison. Such games include strategy games such as chess, checkers, Stratego, and Risk. "Where 'other avenues' remain available for the exercise of the asserted right, the courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner*, 107 S. Ct. at 2262 (citations omitted). In the instant case, there is no dispute of material fact that prison officials have determined role-play games to be a threat to safety and security, and prisoner officials have made numerous other game-playing options available to prisoners, including those involving strategy. Thus, the second *Turner* factor supports defendants' position.

In applying the third *Turner* factor, it is undisputed that in George Lombardi's professional judgment inmates may potentially become overly involved in such fantasy games, resulting in violence against other inmates or guards, especially in an environment of a maximum security prison. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of correction officials." *Turner*, 107 S. Ct. at 2262

(citation omitted).  In the instant case, it is clear that the potential of violence is a significant ripple effect; thus, the discretion of prison officials must be given deference.

Finally, as to the fourth *Turner* factor, it is clear that banning games which increase security risks in a maximum security prison is a wiser decision than increasing security to be sure no one gets hurt because of the increase in violence.

For the reasons set forth above, the court finds that, based upon the undisputed material facts and applying the *Turner* factors, the prison regulation banning role-play games is neutral and logically advances the goals of safety and security identified by Missouri prison officials, and is not an exaggerated response to those objectives.  Therefore, the regulation is not in violation of the First Amendment and defendants are entitled to judgment as a matter of law.

The court notes for the record that the issue in this case is the Defendants' ban of role-play materials by JCCC and, therefore, the court will not address plaintiffs' claims in their response to summary judgment which attempt to label some of the materials confiscated from plaintiff Farmer as "creative writings" and, thus, not falling under the category of banned role-play games.  Plaintiffs did not raise this issue in either their first or second amended complaint and this matter has been pending for sometime.  It is not proper to inject new issues for the first time in response to summary judgment.

The court further notes for the record as to the issue of qualified immunity, that even if a ban on role-play games were found to be in violation of the First Amendment, defendants would be entitled to qualified immunity as to any claim for damages because there was/is no legal precedent that denying maximum security inmates role-play games violates their First Amendment rights.  *See, generally, Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (qualified immunity shields governmental officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person should have known).

IT IS, THEREFORE, ORDERED that defendants' motion for summary judgment is granted and plaintiffs' claims are dismissed [94].

7

                                      <u>s/ Nanette K. Laughrey</u>
                                      NANETTE K. LAUGHREY
                                      United States District Judge

Dated:  <u>September 27, 2005</u>
Jefferson City, Missouri